IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


PETER QUINN                          :                    CIVIL ACTION
                                     :                    NO.  11-02471
                    v.               :
                                     :
TAMIKA CINTRON, et al.               :

O'NEILL, J.                                               October 3, 2013


## MEMORANDUM

Plaintiff Peter Quinn, Esq. sued the City of Philadelphia, Tamika Cintron, Detective
Russell Shoemaker and Sergeant Michael Rafferty, alleging that they violated his constitutional
rights during his December 1, 2009 arrest for aggravated assault.  Plaintiff has since stipulated to
the dismissal of Cintron, all claims against the City of Philadelphia and his claim for malicious
prosecution against all defendants.  Presently before me is defendants' motion for partial
summary judgment on two of the remaining three counts and plaintiff's response thereto.[1]
Defendants move for summary judgment on counts two and five of the amended complaint,
which allege false arrest and false imprisonment based on 42 U.S.C. § 1983 and Pennsylvania
state law respectively.  For the reasons that follow, I will grant defendants' motion.

## BACKGROUND

Though the parties disagree significantly on the sequence of events giving rise to
plaintiff's arrest, the undisputed facts are as follows.  On December 1, 2009, plaintiff appeared as
a court appointed attorney in Family Court at 1801 Vine Street, Philadelphia, P.A.  Quinn Dep.
79:19-25 (Pl.'s Ex. 2).  Tamika Cintron, a social worker for the City of Philadelphia Department

---

[1] Defendants have not moved for summary judgment on count one against Sergeant Rafferty for
excessive force in violation of the Fourth Amendment of the U.S. Constitution.

of Human Services was assigned to one of Mr. Quinn's cases.  Id. at 77:20-25.  While waiting

for their shared case to be called, Mr. Quinn and Ms. Cintron had an altercation that was

observed by several witnesses also present in the waiting room including three DHS employees:

Mary Kelly, Marquis Mosley and Shantel Roberts.  Arrest Report, Witnesses (Pl.'s Ex. 1).  Court

Officer Adrian Morris also observed the incident.  Morris Dep. 7:14-9:23 (Pl.'s Ex. 9).  Ms.

Cintron became very upset and repeatedly asserted that Mr. Quinn had elbowed her.  Id. at 7:23-

24, 11:6-13, 35:7 (Pl.'s Ex. 9).  The police were called and Lieutenant Lee, Detective Walls and

defendant Shoemaker were sent to respond to a reported assault.  Seaborough Dep. 11:19-12:11

(Pl.'s Ex. 10), Shoemaker Dep. 12:15-13:3 (Pl.'s Ex. 5).  At the detectives' request, defendant

Rafferty and Police Officer Robin Middleton responded to radio dispatches in order to arrest Mr.

Quinn and transport him to the Central Detectives Division.  Rafferty Dep.  9:12-23 (Pl.'s Ex.

13), Robinson-Middleton Dep.  8:23-93 (Pl.'s Ex. 15), Shoemaker Dep. 21:15-22 (Pl.'s Ex. 5).

Plaintiff states that on December 1, 2009, he went to sit in the only remaining vacant

seat in the waiting room, which was located next to Ms. Cintron.  Pl.'s Am. Compl. at ¶ 13.

Because her jacket was lying on the seat, Mr. Quinn claims he moved it "nicely" and stated "I

believe this is yours." Quinn Dep. 98:8, 102:4 (Pl.'s Ex. 2).  He testified that Ms. Cintron became

angry and accused Mr. Quinn of elbowing her.  Id. at 100:24-25.  Plaintiff avers that rather than

elbowing Ms. Cintron, Ms. Cintron herself elbowed Mr. Quinn and struck him in the face with

her jacket.  Id. at 107:1-5.  Ms. Cintron testified that she did not call the police, the police did not

ask her if she wished to press charges against Mr. Quinn and if asked she would have told the

police she did not know whether Mr. Quinn elbowed her intentionally or unintentionally.

Cintron Dep. 67:5-14, 123:17-24, 103:18-21 (Pl.'s Ex. 3).  Therefore, Mr. Quinn asserts that Ms.

Cintron's allegations were implausible and that a reasonable detective would not have made an arrest as a result of them.  Pl.'s Am. Compl. at ¶ 104

Plaintiff claims that his alleged false arrest and imprisonment were based solely on Ms. Cintron's status as a DHS employee.  Id. at ¶ 101.  Additionally, plaintiff claims that defendants Shoemaker and Rafferty lacked probable cause to arrest him, and did so prior to any investigation of Ms. Cintron's allegations.  Id. at ¶ 104.  In support of these claims plaintiff has produced his own statement at the time of arrest, his deposition on January 30, 2012, Ms. Cintron's deposition and an expert report authored by security consultant Frank D. Wallace.  Pl.'s Am. Compl. Ex. 1, 2, 3, 19.

Defendants contend that the following evidence establishes that they had probable cause to arrest Mr. Quinn for assault.  Upon arriving at 1801 Vine Street, Detective Shoemaker interviewed Ms. Cintron.  Def.'s Mot. Summ. J. at ¶ 14 (Pl.'s Ex. A).  She stated that she had been elbowed and indicated that her rib cage hurt.  Shoemaker Dep. 38:25 (Def.'s Ex. E), Def.'s Mot. Summ. J. at ¶¶ 14-15.  She also identified Mr. Quinn as her assailant and was visibly upset and emotional.  Def.'s Mot. Summ. J. at ¶¶ 14-15.  Additionally, Detective Shoemaker spoke with three witnesses who corroborated Ms. Cintron's account, causing Detective Shoemaker to call for uniformed police officers to take Mr. Quinn to the Central Detectives Division.  Id. at ¶¶ 17, 19.  When Sergeant Rafferty arrived to transport Mr. Quinn, court security officers told him that Mr. Quinn had assaulted a DHS worker and detectives already on the scene instructed Rafferty to take Mr. Quinn to headquarters.  Id. at ¶ 23.  Sergeant Rafferty claims he arrested Mr. Quinn for aggravated assault because of his understanding that simple assault is elevated to

aggravated assault when the victim is a DHS worker.[2] Rafferty Dep. 12:12-20.

## STANDARD OF REVIEW

Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see</u> <u>Celotex</u>, 477 U.S. at 322-23. If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute. <u>See</u> <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 255 (1986). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> A fact is "material" if it might affect the outcome of the case under governing law. <u>Id.</u>

To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

---

[2] There is some dispute in the facts as to the moment of Mr. Quinn's arrest. Plaintiff alleges that he was arrested at 11:40 a.m. at 1801 Vine when he was handcuffed and placed in a police vehicle. Pl.'s Opp. Mem. of Law at p. 13 (Doc. 27-1). Defendant Shoemaker has suggested that the arrest occurred several hours later at 4:10 p.m. after completing interviews at the Central Detectives Division. Def.'s Mot. Summ. J. at ¶ 31. This distinction is ultimately irrelevant because though the interviews were not memorialized until several hours after the incident, the content of the eyewitness interviews was substantially conveyed to officers at the courthouse prior to the arrest. Though probable cause is determined at the moment an arrest is made, and later-developed facts are irrelevant to that determination, in this case the later-developed facts merely added to the facts establishing probable cause supporting arrest at the earlier of the two moments. <u>See e.g.</u>, <u>Beck v. State of Ohio</u>, 379 U.S. 89, 91 (1964).

> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant. Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

## DISCUSSION

Defendants argue that I should enter judgment in their favor because they had probable cause to arrest plaintiff and, alternatively, that even without probable cause they are immune from civil liability under the doctrine of qualified immunity. Plaintiff disagrees and asserts that there are material issues of fact that could cause a jury to conclude his arrest was not supported by probable cause. Additionally, plaintiff contends that defendants are not entitled to qualified immunity because they violated a clearly established constitutional right by conducting a warrantless arrest unsupported by probable cause.

## I. Count two – false arrest and false imprisonment based on section 1983

### A. Probable cause

Defendants move for summary judgment on count two of plaintiff's amended complaint, which alleges false arrest and false imprisonment in violation of 42 U.S.C. § 1983. False arrest and false imprisonment are "nearly identical claims" that may be "analyzed together" Brockington v. City of Phila., 354 F. Supp. 2d 563, 570 n.8 (E.D. Pa. 2005), citing Gagliardi v.

Lynn, 285 A.2d 109 (1971). Claims of both false arrest and false imprisonment are predicated on an arrest made without probable cause in violation of the Fourth Amendment. Baker v. McCollan, 443 U.S. 137, 145 (1979); see also Groman v. Twp. Of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995). Conversely, an arrest supported by probable cause is not a constitutional violation and is therefore not a basis for an action under § 1983. Therefore, the threshold question is whether defendants had probable cause to arrest Mr. Quinn. Baker, 443 U.S. at 143-46 (arrests made on probable cause do not violate due process, and thus do not violate § 1983); Groman, 47 F.3d at 634 (noting that in order to prevail on a false arrest claim under § 1983 plaintiffs would have to prove police lacked probable cause to arrest).

A warrantless arrest by a police officer is reasonable under the Fourth Amendment where the arrest is supported by probable cause. Devenpeck v. Alford, 543 U.S. 146, 153 (2004). Generally, the existence of probable cause is a question of fact for the jury. Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998), citing Patzig v. O'Neil, 577 F.2d 841, 848 (3d Cir. 1978). However, if the evidence of probable cause, viewed in the light most favorable to the non-moving party, "reasonably would not support a contrary factual finding," the Court may find that probable cause existed as a matter of law. Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997). Summary judgment is appropriate if a reasonable jury could not conclude that the police lacked probable cause to arrest the plaintiff. Groman, 47 F.3d at 635.

Probable cause to arrest is present when "the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995). In making this determination, I must consider "the totality of the circumstances presented, and assess the knowledge and information which the

officers possessed at the time of arrest, coupled with the factual occurrences immediately precipitating the arrest."  United States v. Stubbs, 281 F.3d 109, 122 (3d Cir. 2002).  Importantly, the constitutionality of an arrest does not turn on whether the suspect actually committed a crime. Baker, 443 U.S. at 145-46 ("[T]he Constitution does not guarantee that only the guilty will be arrested.  If it did, § 1983 would provide a cause of action for every defendant acquitted – indeed, for every suspect released.")

Generally, police may rely on the statements of a victim or eyewitness to a crime when making a probable cause determination as "it is well-established that when an officer has received . . . information from some person – normally the putative victim or an eyewitness – who it seems reasonable to believe is telling the truth, he has probable cause."  United States v. Richards, No. 08-37, 2008 WL 3874302 at *2 (D.V.I. Aug. 15, 2008), citing Spiegel v. Cortese, 196 F.3d 171, 724 (7th Cir. 1999) (further citations omitted).[3]

Though the Court of Appeals has declined to adopt the blanket rule that a victim's positive identification of her assailant is always sufficient by itself to establish probable cause, the Court recognizes that "a positive identification by a victim witness, without more, would usually be sufficient to establish probable cause," with the qualification that "independent exculpatory evidence or substantial evidence of the witness's own unreliability that is known by the arresting officers could outweigh the identification such that probable cause would not exist." Wilson v. Russo, 212 F.3d 781, 790 (3d Cir. 2000).

---

[3] "It is surely reasonable for a police officer to base his belief in probable cause on a victim's reliable identification of an attacker" since "it is difficult to imagine how a police officer could obtain better evidence of probable cause than an identification by name of assailants provided by a victim, unless, perchance, the officer were to witness the crime himself."  Richards, 2008 WL 3874302, at *2, citing Torchinsky v. Siwinski, 942 F.2d 257, 262 (4th Cir. 1991).

Additionally, police do not have a constitutional duty to investigate a defendant's protestations of innocence or to search for evidence of affirmative defenses prior to making an arrest. See, e.g., Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 790 n. 8 (3d Cir. 2000) (stating police officer is "not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed."); Garcia v. Cnty. of Bucks, 155 F. Supp. 2d 259, 266 (E.D. Pa. 2001) ( "[A]n arresting officer does not, of course, have to accept at face value an arrestee's claim of innocence or mistaken identity").[4]  It is "neither uncommon, nor a barrier to probable cause" for an officer to decline to interview an arrestee and ascertain his version of the events prior to making an arrest.  Anderson v. Goga, No. 11-528, 2013 WL 3242445, at *3 (W.D. Pa. June 25, 2013) (holding an "officer is under no obligation to give any credence to a suspect's story"); Forde v. Home Depot, No. 11-5823, 2011 WL 6372090, at *4 (E.D. Pa. Dec. 20, 2011).  Rather, a reasonable, competent officer may conclude that a putative defendant's protestations of innocence do not negate the determination of probable cause because "the protestations of innocence by an arrestee are so common as to be virtually a matter of course."  Anderson, 2013 WL 3242445, at *3, citing Pearson v. Lorcancaitis, No. 09-1641, 2012 WL 162355 at *10 (D. Ct. Jan. 19, 2012) (further citations omitted).

In this case the undisputed facts show that defendants had probable cause to arrest plaintiff.  Detective Shoemaker decided to arrest Mr. Quinn based on the statement of the putative victim, Ms. Cintron, her identification of Mr. Quinn as the assailant and the statements

---

[4] See also, Craig v. Collins, No. 13-1873, 2013 WL 5271521 at *7 (E.D. Pa. Sept. 17, 2013) ("[A] plaintiff cannot succeed by merely showing that the police could have done a better job of investigating or failed to exhaust all leads after they had enough information to establish probable cause"); Carter v. City of Phila., No. 97-4499, 2000 WL 1578495, at *5 (E.D. Pa Oct. 13, 2000), citing Morrison v. United States, 491 F.2d 344, 346 (8th Cir. 1974) (holding that officer's failure to investigate did not negate probable cause for arrest.  "There is no constitutional or statutory requirement that before an arrest can be made the officer must conduct a trial").

of three eyewitnesses who also identified Mr. Quinn and corroborated Ms. Cintron's account of the incident. Even if Ms. Cintron's statement and identification of Mr. Quinn alone were insufficient to establish probable cause, the corroboration of three additional eyewitnesses surely suffices.

Though the three eyewitnesses are DHS employees and acquaintances of Ms. Cintron, there was no evidence available to Shoemaker to indicate that they were unreliable, untrustworthy or conspiring with her to cause Mr. Quinn's arrest. Mr. Quinn has not disputed that three eyewitnesses gave corroborative statements, nor has he disputed that the police relied on them in determining probable cause. Rather, plaintiff disputes the content of these statements, and that such evidence gives rise to probable cause for his arrest. I disagree. The probable cause standard is an objective one and a reasonable, competent officer may rely on victim and eyewitness statements in determining probable cause.

The Supreme Court has repeatedly held that in determining probable cause, an officer may even rely on information from anonymous informants. E.g., Jones v. United States, 362 U.S. 257, 269 (1960).[5] In this case, the statements which precipitated the probable cause determination did not come from anonymous informants or from witnesses otherwise apparently unreliable or unfit for interview. Rather, the putative victim and the three corroborating eyewitnesses directly observed and experienced the incident, and then made themselves known to the police, allowing defendants to evaluate their information for veracity and reliability before basing a determination of probable cause upon it. Under the totality of these circumstances, with

---

[5] "[I]n testing the sufficiency of probable cause for an officer's action even without a warrant, we have held that he may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." Id.; see also Illinois v. Gates, 462 U.S. 213, 244 (1983) (finding an anonymous letter implicating defendant in drug trafficking was sufficient basis for probable cause).

nothing to indicate the unreliability or dishonesty of the witnesses or the existence of exculpatory evidence, a reasonable jury could not find that defendants lacked probable cause to arrest Mr. Quinn.

Additionally, Mr. Quinn's protestations of innocence and assertion of potential affirmative defenses in his statement to police did not vitiate probable cause for his arrest once it had been established. Therefore, that Mr. Quinn's official statement was not taken until several hours after his arrest does not affect defendants' earlier determination that there was probable cause for his arrest. Neither is it relevant that police failed to obtain statements from other witnesses who plaintiff believes had observed the incident. Because defendants had probable cause to arrest Mr. Quinn after speaking with Ms. Cintron and the three eyewitnesses at the courthouse, defendants did not have an additional duty to undertake an investigation into the content of Mr. Quinn's subsequent interview at the Central Detectives Division.

There is no genuine dispute of material fact that Mr. Quinn's arrest was supported by probable cause or that defendants were not aware of exculpatory evidence at the time of arrest that would negate probable cause. I thus find that plaintiff's arrest was supported by probable cause as a matter of law and that it is therefore not a constitutional violation actionable under § 1983. I will grant defendants' motion for summary judgment with respect to Count II.

### B.    Qualified Immunity

Because I find that plaintiff's arrest was supported by probable cause and probable cause is an absolute defense to claims of false arrest and false imprisonment, defendants need not rely on qualified immunity to prevail on summary judgment. However, as both the Supreme Court and the Court of Appeals have held that the qualified immunity question should be resolved at the earliest moment in litigation in order to "spare a defendant the unwarranted demands

customarily imposed upon those dealing with a long drawn out lawsuit," I will complete that analysis here as well. Sharrar v. Felsing, 128 F.3d 810, 826 (3d Cir. 1997), quoting Siegert v. Gilley, 500 U.S. 226, 232 (1991).[6]

"Government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is "broad in scope and protects 'all but the plainly incompetent or those who knowingly violate the law.'" Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007), citing Couden v. Duffy, 446 F.3d 483, 501 (3d Cir. 2006) (Weis, J., dissenting). To determine whether an officer is entitled to qualified immunity, the Court must determine whether the officer's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 194 (2001). "If the facts, when viewed in the light most favorable to the plaintiff, do not show that the officer violated a constitutional right, then plaintiff's § 1983 claim must fail." Curley, 298 F.3d at 277. The Court must also ask whether the right was clearly established at the time the officer acted. Id. "[W]hen a warrantless arrest is the subject of a § 1983 action, the defendant arresting officer is 'entitled to immunity if a reasonable officer would have believed that probable cause existed to arrest the plaintiff.'" Forde v. Home Depot, No. 11-5823, 2011 WL 6372090 at *2 (E.D. Pa. Dec. 20, 2011), quoting Hunter v. Bryant, 502 U.S. 224, 228 (1991).

Because I have found that plaintiff's arrest was supported by probable cause, defendants' conduct does not violate a clearly established statutory or constitutional right. Therefore

---

[6] A qualified immunity claim should only be submitted to a jury if "the historical facts" material to the issue of the reasonableness of an officer's knowledge are in dispute. Waldon v. Borough of Upper Darby, 77 F. Supp. 2d 655, 656 (E.D. Pa. Dec. 9. 1999) citing Sharrar v. Felsing, 128 F.3d 810 (3d Cir. 1997).

defendants are entitled to qualified immunity.  The statements of the putative victim and the three independent eyewitnesses, absent any indicia of unreliability, would not have caused defendants to believe their subsequent decision to arrest the plaintiff was a violation of his clearly established constitutional rights.  As such, their conduct was not that of a "plainly incompetent" officer, or one who "knowingly violate[d] the law."[7]  Curley, 499 F.3d at 206.

## II.    Count 5 – false arrest and false imprisonment based on state law

Having concluded that plaintiff's § 1983 claim does not survive summary judgment, I turn now to plaintiff's state law claim.  For the reasons that follow I find that plaintiff's state law claim for false arrest and false imprisonment against defendants in their individual capacities is foreclosed by my finding that defendants had probable cause for plaintiff's arrest, and plaintiff's claim against defendants in their official capacities is foreclosed by the immunity provided for in the Pennsylvania Political Subdivision Tort Claims Act.  I will grant defendants' motion for summary judgment with respect to Count V.

### A.    Pennsylvania law:  probable cause defeats a claim of false arrest and false imprisonment

"Pennsylvania state law false arrest claims and federal constitutional false arrest claims are co-extensive as to both elements of proof and elements of damages."  Russoli v. Salisbury Twp., 126 F. Supp. 2d 821, 869 (E.D. Pa. Oct. 20, 2000).  Similarly, in Pennsylvania false imprisonment is an "unlawful" detention, and a detention supported by probable cause is not unlawful.  Id. at 869-70.  The Pennsylvania and federal standards for the existence of probable cause are also the same.  Id. at 869, citing Renk v. City of Pittsburgh, 641 A.2d 289, 293 (1994).

---

[7] To the extent that plaintiff argues the constitutional violation is defendants' failure to thoroughly investigate his innocence before conducting the arrest, rather than effectuating an arrest without probable cause, my finding is the same – defendants are entitled to qualified immunity because "the officers were reasonable in believing that no clearly established law required them to investigate plaintiff's claims before arresting him."  Waldon, 77 F. Supp. 2d at 658.

Therefore, my finding that defendants had probable cause to arrest Mr. Quinn defeats plaintiff's state law false arrest and false imprisonment claim against the individual defendants.

## B.     The Pennsylvania Political Subdivision Tort Claims Act immunity[8]

The PSTCA provides "that a government official may only be held liable for conduct that 'constitute[s] a crime, actual fraud, actual malice of willful misconduct.'" Jones v. City of Phila., No. 08-3336, 2011 WL 710212 at *5 (E.D. Pa. Feb. 25, 2011), citing 42 Pa. Cons. Stat. §§ 8542, 8550.  Generally, "willful misconduct" is equated with intentional torts.  Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994), citing King v. Breach, 540 A.2d 976, 981 (Pa. Comm. Ct. 1988).  In the absence of such willful misconduct, defendant arresting officers are shielded from civil liability in their official capacities.  Basile v. Twp. of Smith, 752 F. Supp. 2d 643, 670 (W.D. Pa. Nov. 10, 2010), citing DeBellis v. Kulp, 166 F. Supp. 2d 255, 278 (E.D. Pa. 2001).

There is no evidence that defendants intended to effectuate an arrest in the absence of probable cause.  As stated above, under these facts a reasonable officer in defendants' place would have relied on the statements of the putative victim and the three eyewitnesses and arrived at a determination that he had probable cause to arrest the plaintiff.  Additionally officers did not encounter any evidence tending to exculpate the plaintiff prior to his arrest, nor did they find any indicia of unreliability in the statements of any of the witnesses.  Therefore, there is no evidence

---

[8] Although defendants have not raised the issue of PSTCA immunity in their motion for summary judgment, I may evaluate it sua sponte because there is no prejudice to plaintiff where plaintiff is aware of the immunity defense, having acknowledged it in his amended complaint. Pl.'s Am. Compl. at ¶ 130.  See also Basile v. Twp. of Smith, 752 F. Supp. 2d 643, 669 n.26 (W.D. Pa. Nov. 10, 2010) ("Although the Smith Twp. Defendants did not raise an immunity argument under the PSTCA, the Court's ruling is equally applicable to them.  Plaintiffs will not be prejudiced in any way by the Court applying, *sua sponte*, its ruling on the Burgettstown Defendants' immunity argument to the Smith Twp. Defendants, as Plaintiffs were aware of the immunity argument in the Burgettstown Defendants' brief and yet failed to provide any argument or authority in opposition.")

that defendants engaged in any misconduct, willful or otherwise, rendering them immune under the PSTCA in their official capacities.

## CONCLUSION

Plaintiff's claims against the City of Philadelphia and Ms. Cintron have been dismissed pursuant to stipulation. Plaintiff's claims of malicious prosecution against all defendants have also been dismissed pursuant to stipulation. I will grant in full defendants' partial motion for summary judgment on plaintiff's claims for false arrest and false imprisonment based on both § 1983 and Pennsylvania state law. Plaintiff's claim of excessive force in violation of the Fourth Amendment of the U.S. Constitution against defendants Rafferty and Shoemaker remains for trial.

An appropriate Order follows.